IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CLAYTA FORSGREN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-1223 L |
| THE UNITED STATES OF AMERICA, | ) | Judge Margaret M. Sweeney |
| Defendant. | ) | (Electronically Filed April 28, 2006) |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

G. EVAN PRITCHARD
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0203
Fax: (202) 305-0506
E-Mail: g.evan.pritchard@usdoj.gov

OF COUNSEL:

Steven M. Hoffman
Attorney
Office of the Solicitor
Rocky Mountain Regional Office
United States Dept. of Interior
755 Parfet Street, Room 151
Lakewood, CO 80215

Diane M. Connolly
Deputy Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
Mountain Region
P.O. Box 25005
Lakewood, CO 80225

## TABLE OF CONTENTS

DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION . . . . . . . . . . . . . . . . . . . . . . . 1

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. This Court Lacks Jurisdiction over Plaintiffs' Complaint Pursuant to 28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1. Motion to Dismiss Standard of Review under RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. The Pendency of the Same Claim in Federal District Court Divests This Court of Jurisdiction Under 28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

a. Plaintiffs' Claim in District Court was Pending at the Time Filed Their Complaint in the CFC . . . . . . . . 11

b. Plaintiffs' Claim in the District Court is the "Same Claim" as in the CFC for Purposes of 28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. Alternatively, Plaintiffs' Claim Accrued in 1997 and is Therefore Barred by the Statute of Limitations . . . . . . . . . . . . . 13

1. Standard of Review Under RCFC 56(b) . . . . . . . . . . . . . 13

2. The Extent of the Damage of Plaintiffs' Property was Foreseeable by 1997 . . . . . . . . . . . . . . . . . . . . . . . . 14

3. Plaintiffs Had No Reason to Expect Further Help from the Committee After August of 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 14

Boling v. United States,
220 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 14

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 14

Firebaugh v. United States,
No. 05-262L, 2006 WL 950205 (Fed. Cl. Mar. 29, 2006) . . . . . . . . . . 9

Forsgren v. United States,
64 Fed. Cl. 456 (2005) . . . . . . . . . . 8, 14, 16

Harbuck v. United States,
58 Fed. Cl. 266 (2003), 378 F.3d 1324 (Fed. Cir. 2004), cert. denied,
125 S. Ct. 1386 (2005) . . . . . . . . . . 12

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . 9, 10, 11-12

Knieper v. United States,
38 Fed. Cl. 128 (1997) . . . . . . . . . . 14

Loveladies Harbor, Inc. v. United States,
27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . 11, 12

Maher v. United States,
314 F.3d 600 (Fed. Cir. 2002), cert. denied, 540 U.S. 821 (2003) . . . . . . . . . . 8, 9

Owen Equip. & Erection Co. v. Kroger,
437 U.S. 365 (1978) . . . . . . . . . . 9

Snyder v. United States,
63 Fed. Cl. 762 (2005) . . . . . . . . . . 9

Tabb Lakes v. United States,
26 Cl. Ct. 1334 (1992) . . . . . . . . . . 14

Toxgon Corp. V. BNFL, Inc.,
312 F.3d 1379 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. County of Cook, Illinois,
170 F.3d 1084 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

United States v. Dickinson,
331 U.S. 745 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

UNR Industries,
962 F.2d 1021 (1992), aff'd sub nom. Keene, 508 U.S. 200 (1993) . . . . . . . . . . . . . . . . 12

Vaizburd v. United States,
46 Fed. Cl. 309 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Whyte v. United States,
59 Fed. Cl. 493 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wilson v. United States,
32 Fed. Cl. 794 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8, 13

**RULES**

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9
RCFC 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## LIST OF EXHIBITS

| Exhibit No. | Exhibit Description |
|---|---|
| 1 | Environmental Assessment with Cover Letter dated April 20, 1994 |
| 2 | Excerpts of Deposition Transcript of David Harper |
| 3 | Letter dated May 21, 1988 to Lynn Williams and Brian Stout from Richard A. Forsgren |
| 4 | Letter from Dick Forsgren to Editor as Published in Pinedale Roundup on May 26, 1988 |
| 5 | Minutes of CCC Ponds dated May 7, 1993 |
| 6 | Minutes of CCC Ponds dated June 22, 1993 |
| 7 | Excerpts of Deposition Transcript of P. Stanley Mitchem |
| 8 | Handwritten notes from Deposition of Mitchem (Exhibit 1 to Mitchem Deposition) |
| 9 | Memorandum to Duane D. Klamm from P. Stan Mitchem dated November 14, 1995 |
| 10 | Application for Permit to Appropriate Surface Water dated March 7, 1996 |
| 11 | Minutes of CCC Pond Meeting dated September 27, 1995 |
| 12 | Excerpts of Deposition Transcript of Janet L. Montgomery |
| 13 | Letter to Mr. & Mrs. Richard Forsgren from Janet L. Montgomery dated June 2, 1997 |
| 14 | Excerpts of Deposition Transcript of Daryle Bennett |
| 15 | Assistance Note Entry dated August 26, 1997 |
| 16 | Excerpts of Deposition Transcript of Clayta Forsgren |
| 17 | Letter dated August 29, 1997 to Mr. & Mrs. Dick Forsgren from Daryle Bennett |

| | |
|---|---|
| 18 | Letter dated February 11, 1999 to Leslie Theiss from Clayta Forsgren |
| 19 | Letter dated June 17, 1999 to Bureau of Land Management from Clayta Forsgren |
| 20 | Letter dated July 20, 1999 to Prill Mecham from Gerald R. Mason |
| 21 | Complaint in Clayta Forsgren and The Forsgren Family Trust v. United States, Case No. 03-1040-B (U.S.D.C. Wy.) |
| 22 | Order of Dismissal in Clayta Forsgren and The Forsgren Family Trust v. United States, Case No. 03-1040-B (U.S.D.C. Wy.) |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant, United States of America, hereby respectfully moves the Court to dismiss Plaintiffs' Complaint for lack of jurisdiction. As set forth in the following memorandum, because Plaintiffs had a claim pending in federal district court that arose out of the same operative facts and sought the same relief as in this case, this Court is divested of jurisdiction over the claims set forth in the Complaint filed in this case by operation of 28 U.S.C. § 1500. Plaintiffs' Complaint must therefore be dismissed, without prejudice, for lack of jurisdiction.

Alternatively, Defendant moves for summary judgment pursuant to RCFC 56(b) on the grounds that Plaintiffs' claim is time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501, because their claim accrued more than six years prior to the filing of the Complaint on July 27, 2004.[1/] A memorandum in support of this motion follows.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**

The claim in this case arises out of alterations that were made in 1995 to ponds located near Plaintiffs' property. Plaintiffs allege that these alterations caused excessive water and ice to accumulate on their property between 1995 and 1999, resulting in the taking of their property

---

[1/] As explained infra, Defendant previously sought dismissal of Plaintiffs' Complaint on statute of limitations grounds. That motion was denied on March 21, 2005 by Chief Judge Edward J. Damich. However, since the filing of the prior motion, extensive discovery was conducted. That discovery has revealed considerable evidence supporting the statute of limitations defense, thus necessitating the instant motion.

rights and interests.[2] On July 28, 2003, Plaintiffs filed an action in federal district court in Wyoming alleging claims based on the same operative facts that give rise to Plaintiffs' takings claim. A year later, on July 27, 2004, Plaintiffs filed the instant suit while the district court action was pending. As explained in Section III.A of this memorandum, the pendency of the same claims in district court divests this Court of jurisdiction over Plaintiffs' takings claims under 28 U.S.C. § 1500.

Alternatively, as explained in Section III.B of this memorandum, Plaintiffs' claim accrued more than six years prior to the filing of the Complaint. Thus, their suit is also time-barred by the applicable statute of limitations, 28 U.S.C. § 2501.

## I. FACTUAL BACKGROUND

Plaintiff Clayta Forsgren and her deceased husband, Richard "Dick" Forsgren, purchased undeveloped property on Pine Creek near the town of Pinedale, Wyoming in 1966. Compl. ¶¶ 16-17. The property is approximately 1,000 feet from the Civilian Conservation Corps Ponds ("CCC Ponds" or "Ponds") that are located on federal land that abuts the Forsgren property to the east. Id. ¶¶ 14, 16, and 18. The federal land is managed by the United States Department of Interior's Bureau of Land Management ("BLM") and the United States Department of Agriculture's Forest Service ("Forest Service"). See Environmental Assessment with Cover Letter dated April 20, 1994 at Ch. 1-1 (attached hereto as "Ex. 1").

In 1988, Dick Forsgren sought permission from BLM to build a ditch on the federal land to intercept water he claimed was coming downhill onto his property. Harper Dep. at 19:4-24,

[2] Defendant disputes Plaintiffs' assertion that the alterations made to the ponds in 1995 resulted in a taking of their property. However, the issue of liability is beyond the scope of this motion as the Court must first address the jurisdictional questions raised herein.

20:25, 21:1-2 (relevant excerpts attached hereto as "Ex. 2"). He submitted a right-of-way application but soon abandoned the effort because he refused to pay the applicable processing fees. Ex. 2 at 22:17-20, 26:12-25, 27:1. Around the same time, Mr. Forsgren wrote a letter to Forest Service officials in which he expressed his concerns "about the ground drainage and seepage problem on [his] land that comes from the BLM & Forrest [sic] land above [his property]." See Letter dated May 21, 1988 from Dick Forsgren to Forest Service (attached hereto as "Ex. 3") at 1. He claimed that at times he "had as much as three inches of water in [his] garage," that the excessive water had created a "MARSH type problem" in his backyard, and that water had gotten under his foundation and into the basement. Id. (emphasis in original). He therefore feared that the drainage problem would "cause substantial damage" to his home and property if not corrected. Id. Mr. Forsgren sent a similar letter to the editor of a local newspaper, the Pinedale Roundup, in which he stated that "[w]e have always had a drainage - ground water - seepage problem on my land that comes from the BLM land above us." Letter from Dick Forsgren to Editor as Published in Pinedale Roundup on May 26, 1988 at 2 (attached hereto as "Ex. 4").

In 1993, representatives from BLM and the Forest Service, along with concerned individuals and representatives from other federal, state, and local government agencies, (collectively, the "Committee"), met to discuss the feasibility of developing the Ponds to provide outdoor class rooms for local schools, fish habitat, wetlands and access to the Ponds for fisherman ("CCC Ponds Project"). Minutes of Committee Meeting held on May 7, 1993 (attached hereto as "Ex. 5") at DOJ000017. The CCC Ponds Project would entail the construction of a pipeline from nearby Fremont Lake to the Ponds, thereby providing a stable

water supply for two of the ponds.[3] See Ex. 1 at Ch. 1-1.

At a subsequent Committee meeting held on June 22, 1993, Mr. Forsgren expressed concerns about the impact of the CCC Ponds Project on his property and informed the Committee about the problems he had experienced in the past with water in his basement, garage and back yard. Minutes of Committee Meeting held on June 22, 1993 (attached hereto as "Ex. 6") at 1. Based on these concerns, the Committee sent Stan Mitchem, the State Geologist for the Natural Resource Conservation Service ("NRCS"),[4] to inspect the Forsgren property to determine the source of the water problem and to offer some solutions. Id. at 1-2.

Mr. Mitchem, along with Daryle Bennett, District Conservationist for NRCS, visited the property on August 26 and 27, 1993. Mitchem Dep. at 10:16-22, 11:22-23 (relevant excerpts attached hereto as "Ex. 7"); Handwritten Notes dated August 26-27, 1993 by Stan Mitchem (attached hereto as "Ex. 8"); Memorandum dated November 14, 1995 from Stan Mitchem to Duane Klamm (attached hereto as "Ex. 9"). During that 1993 visit, Mr. Mitchem saw two drains on the Forsgren property with water flowing in them. See Ex. 7 at 30:14-15, 17-18, 20-22, 31:2-6, 78:22-25, 79:1-2. The Forsgrens told Messrs. Mitchem and Bennett about a third drain, but it could not be located during the visit. Id. at 79:17-18. Mr. Mitchem installed three monitoring wells so that groundwater levels could be monitored periodically. Id. at 12:10-12. In addition, a new drain location was recommended to help alleviate the Forsgrens' water problems. Id. at

[3] Prior to the CCC Ponds Project, the Ponds were seasonally flooded. See Ex. 1 at Ch. 1-2. The water levels in the Ponds were controlled primarily by seepage from the adjacent Highland Irrigation Canal and secondarily by groundwater. Id.

[4] NRCS, formerly the Soil Conservation Service, is part of the United States Department of Agriculture.

18:15-18.

Construction of the pipeline from Fremont Lake to the Ponds was completed on May 19, 1995. Application for Permit to Appropriate Surface Water dated March 7, 1996 (attached hereto as "Ex. 10") at DOJ000300. Dick Forsgren reported having water problems on his property at a Committee meeting held on September 27, 1995. Minutes of Committee Meeting held on September 27, 1995 (attached hereto as "Ex. 11"). In response, Mr. Mitchem returned to the Forsgren Property and suggested that a surface drain be installed below the seep on the eastern edge of the Forsgren property to divert the water into Pine Creek. See Ex. 9 at DOJ000116. Mr. Forsgren excavated a new drain on his property in the Fall of 1996. Compl. ¶ 42.

In 1997, Mr. Forsgren contacted the Sublette County Assessor, Janet Montgomery, and told her about the drainage problems on his property that he now attributed to the CCC Ponds. Montgomery Dep. at 15:1-4 (relevant excerpts attached hereto as "Ex. 12"). The Forsgrens told Ms. Montgomery that the assessed value of their property was too high in light of water damage that had been sustained. Id. at 15:4-6. Ms. Montgomery visited the property in May of 1997 and observed that the ground around the property was "very, very uneven." Id. at 17:9-14. Inside the house, she saw that "doorways were not straight anymore, . . . the walls pulled away from the kitchen cupboards, the foundation was cracked, [and] the garage door was twisted [and] uneven." Id. at 17:17-21. Ms. Montgomery testified in her deposition that the water damage to the house was obvious, that the walls pulling away from the cupboards represented a "very serious structural problem" and "permanent damage" that would continue to lower the value of the property unless repaired. Id. at 26:13-19, 27:6-13. Based on this property damage, Ms.

Montgomery lowered the assessed value of the Forsgrens' property from $174,034 for 1996 to $156,422 for 1997, a reduction of approximately ten percent. Id. at 20:25, 21:1-7; Letter dated June 2, 1997, from Janet Montgomery to Dick and Clayta Forsgren (attached hereto as "Ex. 13").

On August 26, 1997, the Forsgrens met with Daryle Bennett at his office and Mrs. Forsgren told him that the CCC Ponds had caused extensive damage to her property, including wetness problems, a ruined lawn, and house foundation problems. Bennett Dep. at 96:3-25, 97:1-21 (relevant excerpts attached hereto as "Ex. 14"); Assistance Note Entry dated August 26, 1997 by Daryle Bennett (attached hereto as "Ex. 15"). According to Mrs. Forsgren, Mr. Bennett told them during their meeting that the Committee was not going to help them any further with their water problems. Clayta Forsgren Dep. at 131:18-19 (relevant excerpts attached hereto as "Ex. 16").

In a letter dated August 29, 1997, Mr. Bennett told the Forsgrens that he had been periodically monitoring the wells installed by Stan Mitchem in 1993 and that he had observed no significant changes in groundwater levels. Letter Dated August 29, 1997 from Daryle Bennett to Dick and Clayta Forsgren (attached hereto as "Ex. 17") at DOJ000146. He also stated that he was convinced that the drain installed in 1996 was effectively taking away the surface water on their lawn. Id. He therefore stated that there was no reason for continued monitoring of the wells and offered to remove them. Id. Mr. Bennett added that he believed that the "changes in wetness" the Forsgrens observed from year to year were probably attributable to elevated snowpack, runoff and rainfall. Id. at DOJ000146-147. He then wrote that the source of the spring on their property was unknown, but had been there "for a very long time," and that in any case, the drain was "pulling off the surface water from [their] property exactly as planned." Id.

at DOJ000147.

On February 11, 1999, Mrs. Forsgren sent a letter to BLM stating that there had never been a problem with water on her property of any kind prior to the 1995 CCC Ponds Project. Letter dated February 11, 1999 from Clayta Forsgren to BLM (attached hereto as "Ex. 18") at DOJ000149. She also stated that the drain installed on her property in 1996 had failed to solve the water problems. Id. According to the letter, she had made a request in 1997 that a drain be placed on the federal land to intercept water before it reached her property but had been "advised in no uncertain terms that no further action was contemplated." Id. at DOJ000150. She then renewed her request that a drain be excavated on federal property. Id. at DOJ000149.

In a follow-up letter to BLM dated June 17, 1999, Mrs. Forsgren wrote that the statement in her earlier letter that there had never been water on her property prior to the CCC Ponds Project was an error. Letter dated June 17, 1999 from Clayta Forsgren to BLM (attached hereto as "Ex. 19"). She stated that her husband had previously informed the government about prior conditions on their property and "what he told you previously is what I am going by." Id. Mr. Forsgren had complained to the government in 1988 and in 1993 about water problems on his property over the years. See Exs. 2-5.

The government installed a subsurface drain on its land in 1999 after Mrs. Forsgren agreed that the installation would not constitute or be used as an admission of liability and that the source of the excess water remained in dispute. Compl. ¶ 58; Letter dated July 20, 1999, from attorney Gerald R. Mason to BLM (attached hereto as "Ex. 20").

## II. PROCEDURAL BACKGROUND

On July 28, 2003, Plaintiffs filed a complaint in the United States District Court for the

District of Wyoming ("Tort Complaint"). Compl. in Forsgren v. United States, No. 3-CV-1040-B (D. Wyo. filed July 28, 2003) (attached hereto as "Ex. 21"). Plaintiffs filed their complaint in this Court on July 27, 2004 ("CFC Complaint"), while the Tort Complaint was still pending. The Tort Complaint was subsequently dismissed with prejudice on August 16, 2004. Order of Dismissal in Forsgren v. United States, No. 3-CV-1040-B (D. Wyo. filed July 28, 2003) (attached hereto as "Ex. 22").

On October 25, 2004, Defendant filed its Motion to Dismiss for Lack of Jurisdiction in the instant action, arguing that Plaintiffs' takings claim was barred by the applicable statute of limitations, 28 U.S.C. § 2501, and that Plaintiffs' claims for equitable relief must be dismissed because the Court has no jurisdiction over equitable claims. Def.'s Mot. at 10-11. Chief Judge Edward J. Damich granted in part and denied in part Defendant's Motion on March 21, 2005. Forsgren v. United States, 64 Fed. Cl. 456 (2005). The Court held that Plaintiffs' takings claim accrued in 1999 and was therefore not barred by the statute of limitations, 28 U.S.C. § 2501. The Court also dismissed Plaintiffs' claims for equitable relief. Id. at 459-60.

## III. ARGUMENT

### A. This Court Lacks Jurisdiction over Plaintiffs' Complaint Pursuant to 28 U.S.C. § 1500

#### 1. Motion to Dismiss Standard of Review under RCFC 12(b)(1)

The determination of whether this Court has subject matter jurisdiction to hear a plaintiff's claims is a question of law. See Toxgon Corp. V. BNFL, Inc., 312 F.3d 1379, 1381 (Fed. Cir. 2002) ("the existence of subject matter jurisdiction is a question of law"); Maher v. United States, 314 F.3d 600, 603 (Fed. Cir. 2002) (noting that the Federal Circuit reviews de novo whether the Court of Federal Claims possessed jurisdiction because this is a question of

law), cert. denied, 540 U.S. 821 (2003). Dismissal is appropriate under RCFC 12(b)(1) where the Court of Federal Claims lacks jurisdiction under 28 U.S.C. § 1500. See, e.g. Snyder v. United States, 63 Fed. Cl. 762 (2005) (granting government's motion to dismiss pursuant to 12(b)(1) for lack of jurisdiction under 28 U.S.C. § 1500 and pursuant to RCFC 17); Wilson v. United States, 32 Fed. Cl. 794 (1995) (granting government's motion to dismiss pursuant to 12(b)(1) or 12(b)(4) for lack of jurisdiction under 28 U.S.C. § 1500); Firebaugh v. United States, No. 05-262L, 2006 WL 950205 (Fed. Cl. Mar. 29, 2006) (granting government's motion to dismiss pursuant to 12(b)(1) for lack of jurisdiction under 28 U.S.C. § 1500).

### 2. The Pendency of the Same Claim in Federal District Court Divests This Court of Jurisdiction Under 28 U.S.C. § 1500

The Supreme Court has recognized that "Congress has the constitutional authority to define the jurisdiction of the lower federal courts. . . ." Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (citations omitted). Once these jurisdictional lines have been drawn by Congress, they "'must be neither disregarded nor evaded.'" Id. (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)).

This case involves the application of 28 U.S.C. § 1500. The determination of whether this statute precludes this Court from exercising jurisdiction over Plaintiffs' takings claims is a question of law. See Toxgon Corp., 312 F.3d at 1381 ("the existence of subject matter jurisdiction is a question of law"); Maher, 314 F.3d at 603 (noting that the Federal Circuit reviews de novo whether the Court of Federal Claims possessed jurisdiction because this is a question of law).

The statute provides in relevant part as follows:

> *Pendency of claims in other courts.* The United States Court of

> Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States. . . .

28 U.S.C § 1500. The Supreme Court has made it clear that § 1500 precludes this Court from exercising jurisdiction "over the claim of a plaintiff who, upon filing [in the CFC], has an action pending in any other court 'for or in respect to' the same claim." Keene Corp., 508 U.S. at 209 (footnote omitted).

The rationale for § 1500 has been explained by the Federal Circuit as follows:

> we endeavor to further the established policies of §1500, which are "to force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," UNR [Industries, Inc. v. United States], 962 F.2d [1013,] 1018 [(Fed. Cir. 1992)] (citing the legislative history of the original version of §1500, 81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868)), and to "protect the United States from having to defend two lawsuits over the same matter simultaneously," id. at 1019. . . . These policies are promoted by precluding jurisdiction in the Court of Federal Claims over claims which had been previously filed in the district courts. . . .

United States v. County of Cook, Illinois, 170 F.3d 1084, 1090-91 (Fed. Cir. 1999). See also Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 1386 (2005).

The Federal Circuit, sitting en banc, has interpreted 28 U.S.C. § 1500 to mean that if the same claim is pending in another court at the time the complaint is filed in this Court, this Court has no jurisdiction, regardless of when an objection is raised or acted on. UNR Industries, 962 F.2d at 1021. This interpretation was upheld in Keene, where the Supreme Court stated that when applying the jurisdictional bar imposed by §1500, the CFC's jurisdiction depends upon the state of things at the time the CFC complaint is filed. Keene, 508 U.S. at 207. For the CFC to be barred from entertaining a claim under § 1500, "the claim pending in another court must arise

from the same operative facts, and must seek the same relief." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994). All aspects of this test are met in this case.

**a. Plaintiffs' Claim in District Court was Pending at the Time they Filed Their Complaint in the CFC**

The first part of determining whether § 1500 applies in this case is to determine whether Plaintiffs' district court claim was "pending" at the time their takings claim was filed in the CFC. It is well established that the question of whether another claim is "pending" for purposes of § 1500 is determined at the time the suit is filed in the Court of Federal Claims. Loveladies, 27 F.3d at 1548.

There is no dispute that the "same claim" is considered "pending" in another court for the purposes of § 1500 if that claim was filed prior to or simultaneously with the filing of the same claim in the CFC. County of Cook, 170 F.3d at 1090-91. Thus, if a suit involving the same operative facts and seeking the same type of relief is pending in any forum at the time the suit is brought in this Court, then this Court is divested of jurisdiction under § 1500. This is the case even where the other claim is dismissed prior to the time the § 1500 issue is raised in the CFC. See, e.g. Whyte v. United States, 59 Fed. Cl. 493, 496 (2004) (even if plaintiff's district complaint had been dismissed prior to § 1500 issue being raised in CFC, § 1500 still requires dismissal); Vaizburd v. United States, 46 Fed. Cl. 309, 311 (2000) (dismissal required even where district court dismissed claim before CFC ruled on § 1500 issue).

Plaintiffs' filed their CFC Complaint on July 27, 2004, while their district court claim was still pending before the United States District Court for the District of Wyoming. Thus, the first part of the § 1500 test has been met.

**b. Plaintiffs' Claim in the District Court is the "Same Claim" as in the CFC for Purposes of 28 U.S.C. § 1500**

To meet the "same claim" requirement of 28 U.S.C. §1500, the claim pending in another court must (1) arise from the same operative facts and (2) seek the same relief as the claim pending in the CFC. Loveladies, 27 F.3d at 1551. In applying this "same claim" test, the Federal Circuit (sitting en banc) and the Supreme Court have made it clear that the term "claim" as used in § 1500 is broadly defined. As long as the claims in the action brought in district court involve the "same operative facts" as the action brought by the same parties in this Court, the complaint in this Court must be dismissed, even if the legal theories presented in the two complaints are different. See UNR Industries, 962 F.2d at 1023-24, aff'd sub nom. Keene, 508 U.S. at 210-14. See also County of Cook, 170 F.3d at 1091 ("This test is applied without consideration to the legal theory underlying the claim."). Moreover, "the operative facts need not be identical. It is sufficient that they are substantially the same." Harbuck v. United States, 58 Fed. Cl. 266, 269 (2003) (citing Keene Corp., 508 U.S. at 212), aff'd, 378 F.3d 1324 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 1386 (2005).

Plaintiffs' district court claim and takings claim both arise from the same operative facts. As in their CFC Complaint, Plaintiffs alleged in the Tort Complaint that the CCC Ponds Project caused water to accumulate on their property and resulted in "significant deterioration and damages to the real property owned by Clayta Forsgren and the Forsgren Family Trust." Ex. 21 ¶¶ 12-13. Plaintiffs alleged, inter alia, that the influx of water onto their property constituted both a trespass and a taking without just compensation for which they sought monetary damages. Id. ¶¶ 20-21, 25, 31. Since their district court claim and takings claim both arise from the same operative facts and seek the same relief, they constitute the same claim for purposes of § 1500.

In summary, Plaintiffs' district court claim was pending at the time they filed their claim in this Court, arose from the same operative facts, and sought the same relief as their claim in this Court. Accordingly, Plaintiffs' claim in this Court must be dismissed for lack of jurisdiction under § 1500.

### B. Alternatively, Plaintiffs' Claim Accrued in 1997 and is Therefore Barred by the Statute of Limitations

In the event that the Court finds that it is not divested of jurisdiction under 28 U.S.C. § 1500, Defendant moves in the alternative for summary judgment on the grounds that Plaintiffs' claim is barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501. Since Plaintiffs filed their Complaint on July 27, 2004, their claim is barred if it accrued prior to July 27, 1998. Defendant previously presented the statute of limitations issue to the Court in its Motion to Dismiss filed on October 25, 2004. Chief Judge Damich determined that Plaintiffs' claim was timely because it accrued in 1999. However, evidence cited in this motion that was not available to the Court when it issued its ruling demonstrates that Plaintiffs' claim actually accrued in 1997. Accordingly, Plaintiffs' claim is barred by the statute of limitations and moves for summary judgment.

#### 1. Standard of Review Under RCFC 56(b)

Summary judgment is "properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Tabb Lakes v. United States, 26 Cl. Ct. 1334, 1344 (1992), aff'd, 10 F.3d 796 (Fed. Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). Summary judgment is proper where there is no genuine dispute as to any material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes

that are irrelevant or unnecessary will not be counted."); Knieper v. United States, 38 Fed. Cl. 128, 134 (1997) ("Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment.").

**2. The Extent of the Damage to Plaintiffs' Property was Foreseeable by 1997**

In its 2005 opinion, the Court stated that Plaintiffs' takings claim accrued "when Plaintiffs should have reasonably foreseen the *extent* of the damage to their property," Forsgren, 64 Fed. Cl. 456, 459 (emphasis in the original) (citing Boling v. United States, 220 F.3d 1365, 1371 (Fed. Cir. 2000)). Viewing the facts in the light most favorable to Plaintiffs, the Court concluded that Plaintiffs' claim accrued in 1999, noting that "Mrs. Forsgren claims that it was not until early 1999 that she began to notice huge cracks in her ceilings, cabinet doors that would no longer hang properly, and sticking windows and doors." Forsgren, 64 Fed. Cl. at 459 (citing Compl. ¶ 54.). The Court also cited Plaintiffs' claim that

> it was not until later in that same year that a local builder examined the house and found that the kitchen foundation had been partially destroyed by water and ice, that the girder supports in the living room had heaved or buckled, and that the ground beneath the living room was so wet that it had caused the foundation to sink.

Id. (citing Compl. ¶ 57). Based on these representations by Plaintiffs, the Court concluded that the extent of the damage was not foreseeable until 1999 and their claim was therefore not barred by the statute of limitations.

Notwithstanding Plaintiffs' allegations in their Complaint that this Court relied upon, Plaintiffs unquestionably were aware of the damage to their property long before 1999. It was sometime during the spring of 1997 that they contacted Janet Montgomery, the Sublette County Assessor, and told her about that the damage to their house allegedly cause by water from the

Ponds. Ex. 12 at 15:1-4. The Forsgrens believed that the damage was so great that the assessed value of their property was too high. Id. at 15:4-6. At the request of the Forsgrens, Ms. Montgomery visited the property in May of 1997 and observed that the ground around the property was "very, very uneven." Id. at 17:9-14. Inside the house, she saw that "doorways were not straight anymore, . . . the walls pulled away from the kitchen cupboards, the foundation was cracked, [and] the garage door was twisted [and] uneven." Id. at 17:17-21. Ms. Montgomery testified that the water damage was obvious and constituted a "very serious structural problem" and "permanent damage" that would continue to lower the value of the property unless repaired. Id. at 26:13-19, 27:6-13. She therefore lowered the assessed value of the property from $174,034 to $156,422, or by about ten percent. Id. at 20:25, 21:1-7; see also Ex. 13.

The damage Ms. Montgomery observed, prompting her to lower the assessed value of Plaintiffs' property, makes clear that the extent of the damage was foreseeable at least by the time of her visit in 1997. At the very least, Plaintiffs were aware by that time that their foundation was cracked and that their house had serious structural issues that needed immediate attention. For these reasons, the Court should now find that Plaintiffs claims accrued no later than 1997 and is therefore barred by the statute of limitations.

**3. Plaintiffs Had No Reason to Expect Further Help from the Committee After August of 1997**

Although not necessary to its holding, the Court stated in its 2005 Opinion that "[e]ven if the Court had found that the damage to Plaintiffs' property was otherwise foreseeable prior to July 1998, Defendant's motion to dismiss would fail because the government's attempts to repair the damage to Plaintiffs' land caused the date of accrual to be uncertain." Forsgren, 64 Fed. Cl. at 459 (citing United States v. Dickinson, 331 U.S. at 745, 748-49 (1947)). The Court observed that although the government consistently denied liability, it "also tried persistently to mitigate the flooding." Id. (citing Pls.' Resp. at 3-4). Specifically, a geologist was sent by the government to the property in 1995 who recommended a drain that was partially completed with money from the Committee. Id. at 460 (citing Pls.' Exs. 4, 5). The Court further noted that "the final solution to Plaintiffs' flooding problems, the subsurface drain, was installed on BLM land and paid for with federal funds." Id. (citing Compl. ¶¶ 58-59). The Court also opined that "[m]ost likely, if the government had not tried to help the Forsgrens at the beginning of the CCC Ponds Project, Plaintiffs also would have filed suit at an earlier date," and that it is therefore "easy to see how this appearance of cooperation from the government could have caused Plaintiffs to delay filing suit." Id. Finally, the Court noted that if it ruled that Plaintiffs' claim accrued at an earlier date, "the Court would be giving plaintiffs and defendants an incentive to act irrationally and engage in confrontational behavior." Id.[5/]

[5/] Defendant respectfully disagrees with the Court's statement regarding incentives to act. Rather than encourage cooperation, a ruling by the Court that accrual of Plaintiffs' claim was delayed by the government's efforts to help will have the opposite effect. Such a ruling will provide government agencies a perverse incentive not to act in the future for fear of strengthening what would otherwise be stale claims.

While the Committee provided Plaintiffs with a great deal of help and cooperation in addressing their water problems, Plaintiffs had no reasonable expectation of continuing assistance after 1997. On August 26 of that year, Mrs. Forsgren told Daryle Bennett that the CCC Ponds had caused extensive damage to her property, including wetness problems, a ruined lawn, and house foundation problems. See Ex. 15. According to Mrs. Forsgren, Mr. Bennett then told her and Mr. Forsgren that the Committee was not going to help them any further with their water problems. See Ex. 16 at 131:18-19. Mrs. Forsgren stated later in a letter to BLM that when she sought further assistance from the Committee in 1997 she was "advised in no uncertain terms that no further action was contemplated." See Ex. 18 at DOJ000149.

Mr. Bennett explained to the Forsgrens in a letter dated August 29, 1997, that he did not believe the Ponds had affected the groundwater levels around their property and that the drain installed in 1996 had basically solved their water problems. See Ex. 17 at DOJ000146. He therefore offered to remove the monitoring wells and suggested that their problems were attributable to elevated precipitation levels that coincided with the CCC Ponds Project. Id. Finally, he stated that the source of the spring on their property was unknown but had been there a very long time. Id. at DOJ000147.

After Mr. Bennett's letter in 1997, contact between Plaintiffs and the Committee did not resume until Mrs. Forsgren sent her letter to BLM in February of 1999. During that year and a half of silence, Plaintiffs could have no expectation of further help that might cause the accrual date for their takings claim to be uncertain. Thus, their claim accrued, at the very latest, upon learning in August of 1997 that they could expect no further help with their water problems and had no basis for delay in filing suit. Their claim is therefore barred by the statute of limitations.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint for lack of jurisdiction pursuant to the requirements of 28 U.S.C. § 1500. Alternatively, Defendant moves for summary judgment on the grounds that Plaintiffs' claim accrued in 1997, and is therefore barred by the statute of limitations.

DATED: April 28, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s G. Evan Pritchard
G. EVAN PRITCHARD
Environment & Natural Resources Division
Natural Resources Section
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-305-0203
Fax: 202-305-0506
E-mail: g.evan.pritchard@usdoj.gov

OF COUNSEL:

Steven M. Hoffman
Attorney
Office of the Solicitor
Rocky Mountain Regional Office
United States Dept. of Interior
755 Parfet Street, Room 151
Lakewood, CO 80215
(303) 231-5363 fax

Diane M. Connolly
Deputy Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
Mountain Region
P.O. Box 25005
Lakewood, CO 80225
(303) 275-5557 fax

333031.4