UNITED STATES COURT OF FEDERAL CLAIMS

CLAYTA FORSGREN, et al., ) DEPOSITION OF:
) DEAN FORSGREN
Plaintiffs, )
)
vs. )
) Case No. 04-1223 L
UNITED STATES OF AMERICA, ) Judge Margaret M. Sweeney
)
Defendant. )

BE IT REMEMBERED that on the 8th day of March, 2006, that the deposition of DEAN FORSGREN, produced as a witness herein at the instance of the plaintiffs herein, in the above-entitled action now pending in the above-named court, was taken before DEBRA A. DIBBLE, a Registered Professional Reporter in and for the State of Utah, commencing at the hour of 3:33 a.m. of said day, at the offices of PRUITT & GUSHEE, 48 West Market Street, Suite 300, Salt Lake City, Utah.



A P P E A R A N C E S

FOR THE PLAINTIFF:

Erin S. Eastman
Karen Budd-Falen
Attorney at Law
Budd-Falen Law Offices, LLC.
300 East 18th Street
P.O. Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105
Main@buddfalen.com

FOR THE DEFENDANT:

G. Evan Pritchard
Attorney at Law
National Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street, NW
Room 3207
Washington, DC 20004

Diane M. Connolly
Deputy Regional Attorney
U.S. Department of Agriculture
Office of the General Counsel
Mountain Region
740 Simms, Suite 309
Golden, Colorado 80401
(303) 275-5555
diane.connolly@usda.gov

ALSO PRESENT:

Clayta Forsgren
Barbara Thompson
Jean Forsgren



I N D E X


DEAN FORSGREN: Page

Direct Examination by MR. PRITCHARD: 4
Cross Examination by MS. EASTMAN: 16
Redirect Examination by MR. PRITCHARD: 17


E X H I B I T S

| Number | Description | Page |
|---|---|---|
| | (There were no exhibits marked.) | |


REPORTERS CERTIFICATE: Page 20




PROCEEDINGS

DEAN FORSGREN

having first been duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. PRITCHARD:

Q. Good afternoon

A. Afternoon.

Q. Could you please go ahead and state your full name for the record, please?

A. Dean Frank Forsgren.

Q. And could you give us your home address?

A. 244 Aspen Hills Court; Evanston, Wyoming. 82930.

Q. Have you ever had your deposition taken before?

A. Yes.

Q. So you know the ground rules, that you have to give verbal responses to questions? Try not to talk when I'm talking?

A. Correct.

Q. And wait until you hear the full question?

If you don't understand a question I ask, just tell me and I'll try to clear it up?

A. Okay.

EXHIBIT 11 04-1223 tabbles

for a second?

(Whereupon, a discussion was held off the record.)

Q. (BY MR. PRITCHARD) Do you ever remember your aunt or uncle telling you about water problems they were experiencing?

A. Yeah. They mentioned some problems that he had had.

Q. Do you remember the first time they alerted you?

A. No, I don't, honestly, but it had to -- it was after we moved to Evanston, and we moved to Evanston in 1984. But I don't know exactly when it was after that.

Q. Do you ever remember being contacted by your uncle, while you were at BLM, in regards to his property in Pinedale?

A. Vaguely. But I do. Yeah, I do remember we had a conversation, but that was a long time ago.

Q. Do you remember anything about the conversation?

A. No, not -- not particularly.

I think he was trying to -- he thought of purchasing some land up there, and he asked me if BLM ever sold land, and I said yeah.



And if -- beyond that, if there was any further conversation, I may have given him the name of one of the lands people that worked there in the Rock Springs office.

But -- or I may have even talked to those people, but that's all that I recall.

Q. And you said that was some time during your tenure at BLM, '74 to '81?

A. Yeah.

Q. Do you remember --

A. Do I specifically? I don't have a clue.

Q. Okay.

And you -- do you remember other times that you discussed, with either Dick or Clayta, or anyone else for that matter, problems with water on the property?

A. Well, yeah. We did. But I don't know exactly when. It had to have been in the late '90 timeframe, or something like that, when we'd run into them, either at my folks' place, or we'd see them at Rock Springs. We visited, and asked how things were going. You know, that type of thing.

I don't know the nature of the problem. I know that they mentioned that they had had water problems.



Q. And again, you think that's in the late '90s?

A. Yeah.

We didn't see each other on a regular basis, but, you know, we'd run into each other periodically. And at Uncle Dick's funeral, and, you know, at times prior to that we'd run into each other occasionally.

Q. During any of your visits did you ever see standing water or ice on the property?

A. No. But I was never -- well, I shouldn't say I was never there in the wintertime, but most of the time I was there was in the summertime, and, like I said, 1990; 1984, '3. It was that long in between.

Q. Do you know if there were ever -- did you ever see or hear of any drains or ditches on the property?

A. Mm-hmm. (Witness shakes his head.)

Q. That was a no?

A. No. That was a no. Sorry.

Q. Did you ever hear of any other measures that were taken to deal with water issues on their property?

A. No.

Q. Did you ever hear either Dick or Clayta express concerns about the work that was done on the ponds in 1995, prospectively?



A. Yes. I can't tell you exactly what, but I do remember they were concerned about it.

Q. Do you know if the house -- their house on Pine Creek is located in a flood plain?

A. Well, I don't know that for a fact, no. But I presume it is, since it's right next to Pine Creek.

Q. Do you know if their property is located in an old oxbow, or meander of Pine Creek?

A. No. I have no idea.

MR. PRITCHARD: Did you have anything you wanted to ask him?

MS. EASTMAN: I just want a to ask a question for clarification.

CROSS EXAMINATION

BY MS. EASTMAN:

Q. Mr. Pritchard asked you about the first time that Dick Forsgren contacted you when you were working at the BLM.

A. (Witness nods.)

Q. What did he contact you for?

A. Well, my recollection is is that he was interested in purchasing some land --

Q. Do you know why --

A. -- from BLM.

Q. Do you know why he wanted to purchase the